626 F.2d 293
 Ivana FIELD, Individually and as Administratrix of the
Estate of Arthur Field, Deceased, and Michael
Field, by his natural mother and
guardian, Lucille Field, Appellants,
v.
VOLKSWAGENWERK AG and Volkswagen of America, Inc.
 No. 79-1710.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 10, 1980.
Decided July 10, 1980.
 
 William C. Archbold, Jr. (argued), Kassab, Cherry, Curran & Archbold, Media, Pa., for appellee; Vincent D. Mancini, Media, Pa., on brief; James D. Butler, Jersey City, N.J., of counsel.
 John T. Dolan (argued), Crummy, DelDeo, Dolan & Purcell, Newark, N.J., for appellants; David J. Sheehan, John H. Klock, Newark, N.J., on brief.
 Before SEITZ, Chief Judge, and ADAMS and WEIS, Circuit Judges.
 OPINION OF THE COURT
 ADAMS, Circuit Judge.
 
 I.
 
 1
 This appeal arises out of a motor vehicle accident that occurred in Italy on August 13, 1975. The single vehicle involved in the accident was a 1974 Volkswagen van manufactured by the defendant-appellee, Volkswagenwerk Aktiengesellschaft (VWAG), a West German corporation. At the time of the accident, Ivana Field, one of the plaintiff-appellants, was driving the van. Riding with her were Arthur Field, her husband, and Michael Field, her stepson. As a result of the accident, Arthur Field was killed and Ivana and Michael Field suffered injuries.
 
 
 2
 On August 12, 1977, this action was instituted against VWAG in the United States District Court for the District of New Jersey. Individually, Ivana Field sought damages for loss of consortium, mental distress, and personal injuries. In her capacity as administratrix of Arthur Field's estate, she also made a claim for his wrongful death. In addition, Lucille Field, the decedent's former spouse and Michael's natural mother, asserted a claim in her capacity as Michael's guardian, and sought damages for injuries suffered by him in the accident.
 
 
 3
 The plaintiffs alleged the diversity jurisdiction of the federal courts under 28 U.S.C. § 1332 (1976), and pleaded the jurisdictional prerequisites. As a West German corporation, VWAG is considered to be a foreign citizen. Both Lucille and Michael Field were, at the time suit was filed, and are now, citizens of Rhode Island. Arthur Field, at the time of his death, was a citizen of the State of New York. Discovery disclosed, however, that Ivana Field, contrary to her allegation of New York citizenship, was at the time of the accident and remains to this day a citizen of Czechoslovakia.
 
 
 4
 Upon learning of Ivana Field's Czechoslovakian citizenship, VWAG filed a motion to dismiss all claims because Ivana's presence violated the complete diversity requirement of 28 U.S.C. § 1332(a)(2). In response to VWAG's motion, the plaintiffs requested a voluntary dismissal without prejudice of Ivana Field's individual claim; took the necessary legal steps in New York State to have Lucille Field substituted for Ivana Field as administratrix of Arthur Field's estate; and sought permission to file a second amended complaint to reflect this change. The district court declined to dismiss Ivana Field's individual claim, on the ground that she was an "indispensable party" to this suit. It also refused to allow the proposed amendment to the complaint substituting Lucille Field as administratrix of Arthur Field's estate on the basis that diversity jurisdiction is determined on the basis of the citizenship of the parties at the time the complaint is filed, and accordingly granted VWAG's motion for dismissal without prejudice for lack of subject matter jurisdiction. This appeal followed. We affirm the district court's dismissal of the claims brought by Ivana Field in her individual capacity and in her capacity as administratrix of Arthur Field's estate, but we reverse the portion of the judgment dismissing the separate and individual claim brought by Lucille Field on behalf of Michael Field.
 
 II.
 
 5
 Although the Judiciary Act of 1789 purported to extend federal jurisdiction to all suits in which an alien is a party, the Supreme Court determined at an early date that the Constitution authorizes alienage jurisdiction only of suits between a citizen of a state and an alien.[1] Since then, the federal courts consistently have denied jurisdiction over suits between aliens.[2] In 1875, the statute dealing with diversity jurisdiction was amended to conform to the language of the Constitution,[3] and the current version of the Judicial Code now specifically limits the diversity jurisdiction of federal courts to suits between "citizens of a State and citizens or subjects of a foreign state."[4]
 
 
 6
 That diversity jurisdiction exists under this statute only when there is complete diversity between the parties is a firmly rooted principle, first established in the venerable case of Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267 2 L.Ed. 435 (1806), and recently reaffirmed by the Supreme Court in Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). This requirement pertains to suits between aliens as well as to suits between citizens. Thus, the principle has been applied to deny jurisdiction in an action by an alien against citizens of a state and another alien. Ed & Fred, Inc. v. Puritan Marine Insurance Underwriters, Inc., 506 F.2d 757 (5th Cir. 1975); Ex parte Edelstein, 30 F.2d 636 (2d Cir. 1929). Inasmuch as Ivana Field is a citizen of Czechoslovakia and VWAG is a corporate citizen of West Germany, the district court here determined that Ivana's presence deprived the court of subject matter jurisdiction over Ivana's individual cause of action, as well as over the claims alleged on behalf of Michael Field and Arthur Field's estate.
 
 
 7
 Appellants do not contest, indeed they concede, that Ivana's presence as a party in this suit violates the complete diversity requirement. They contend, however, that she is not an indispensable party to the remaining claims in the suit, and that the district court erred, therefore, in denying the request to dismiss the individual claim of Ivana Field so as to preserve subject matter jurisdiction.
 
 
 8
 The authority of a district court to drop non-diverse parties whose presence is not essential to the suit in order to preserve and perfect its diversity jurisdiction is well-established, Horn v. Lockhart, 84 U.S. (17 Wall.) 570, 21 L.Ed. 657 (1873); Ralli-Coney, Inc. v. Gates, 528 F.2d 572 (5th Cir. 1976); Kerr v. Compagnie De Ultramar, 250 F.2d 860 (2nd Cir. 1958).[5] As Professor Moore has written, in cases where the presence of an allegedly misjoined party will deprive a court of jurisdiction, "there is a clear federal commitment to allow relation back of amendments dropping parties to uphold subject matter jurisdiction."[6] Whether a party may be dropped depends on whether the party is "indispensable" to a just and meaningful litigation of the claims remaining in the suit. As early as 1873, the Supreme Court instructed:
 
 
 9
 "And the question always is, or should be, when objection is taken to the jurisdiction of the court by reason of the citizenship of the parties, whether to a decree authorized by the case presented, they are indispensable parties, for if their interests are severable and a decree without prejudice to their rights can be made, the jurisdiction of the court should be retained and the suit dismissed as to them."
 
 
 10
 Horn v. Lockhart, 84 U.S. (17 Wall.) at 579.
 
 
 11
 Although the district court's authority to dismiss non-diverse parties who are not indispensable derives from Fed.R.Civ.P. 21, the primary factors to be considered by the district court in determining whether a party is indispensable are listed in Fed.R.Civ.P. 19, which provides in part:
 
 
 12
 (a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.
 
 
 13
 (b) Determination by Court Whenever Joinder not Feasible. If a person is described in sub-division (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.
 
 
 14
 Ostensibly guided by these criteria, the district court determined that Ivana Field was in fact indispensable to the litigation and accordingly denied the appellants' request to dismiss her individual claim against VWAG thus requiring a dismissal of the entire lawsuit. In concluding that Ivana was indispensable, the district court began with the assumption that Ivana's possible negligence in operating the van when the accident occurred was an issue in the case. From this assumption, the court reasoned that, if proven, Ivana's negligence might relieve VWAG of liability on all three claims. As a result, the court concluded that permitting the action to proceed in Ivana's absence would prejudice VWAG's rights, apparently because VWAG would then be unable to assert Ivana's negligence against the claims of the remaining parties. Because we are unable to agree with the district court's finding that Ivana Field's dismissal would be prejudicial to VWAG, we hold that its refusal to dismiss the claim was error.
 
 
 15
 Regardless whether Ivana's contributory negligence would constitute a valid defense by VWAG to Ivana's individual claim, it is unlikely that any negligence on Ivana's part could be attributed to either Arthur or Michael Field. And if the facts should establish a joint culpability for negligence, VWAG and Ivana would appear to be jointly and severally liable for the commission of the tort. At most, then, VWAG may have some substantive right of reimbursement, indemnity, or contribution against Ivana, as a joint tort-feasor, for all or part of Arthur and Michael Field's claims against it.[7]
 
 
 16
 But the possibility that VWAG may have a right of reimbursement, indemnity, or contribution against Ivana is not sufficient to make Ivana indispensable to the litigation. This is so because under Fed.R.Civ.P. 14(a) a defendant is authorized to bring into a lawsuit any person "not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him."[8] VWAG thus would not appear to suffer prejudice from Ivana's dismissal in her individual capacity, because it could then implead her as a third-party defendant to the remaining allegations. Indeed, dropping Ivana as a party-plaintiff would seem to impose no greater hardship upon VWAG than it would have faced if Ivana's presence did not violate the diversity requirement, and the action had been permitted to proceed with Ivana as an individual plaintiff. In either case, the employment of third-party procedures would be necessary if the rights of all the parties were to be resolved in one action.[9]
 
 
 17
 As is true of all actions in federal courts, a third-party claim must satisfy the requirement of subject matter jurisdiction. VWAG denies that it could implead Ivana as a third-party defendant because, it claims, there would be no independent jurisdictional basis for such a claim. In support of its argument, the defendants rely on the Supreme Court's recent decision in Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). There, the Court ruled that, in an action based on diversity of citizenship any claim asserted by the original plaintiff against a third-party defendant must present an independent jurisdictional ground. But that situation is distinguishable from that which would exist here should VWAG implead Ivana on an allegation that she is or may be liable to VWAG. As Professors Wright & Miller point out, the "cases on point almost all hold that defendant's claim against a third-party defendant is within the ancillary jurisdiction of the federal courts. Thus, it is well-settled that there need be no independent jurisdictional basis for such a claim if diversity of citizenship exists between the original parties."[10] Assuming then that diversity jurisdiction obtains here over one of the original claims, a third-party claim against Ivana Field should be regarded as ancillary to it.
 
 
 18
 Although it was not specifically raised by VWAG on appeal, the district court did offer, as an additional reason for its finding that Ivana is an indispensable party, the argument that Ivana's dismissal "would force VWAG to defend the same claim in two different actions." It is true, of course, that courts and the public have an interest in promoting trial convenience, expediting the settlement of disputes, and preventing multiple lawsuits. To this end, Fed.R.Civ.P. 20 expressly provides for the joinder in a single action of all persons asserting a joint, several, or alternative right to relief that arises out of the same transaction or occurrence, and presents a common question of law or fact. Under this rule, the joinder of a person who has some interest in an action is permitted, even when that interest is not so strong as to require his joinder as a necessary or indispensable party under Rule 19.
 
 
 19
 Joinder of plaintiffs under Rule 20, "has been freely allowed in cases involving vehicular collisions, both when all plaintiffs were directly involved in the accident and when one or more of them were not present at the scene but suffered some type of injury as a result of the event."[11] Rule 20, however, unlike its counterpart Rule 19, prescribes permissive, not necessary or mandatory, joinder of parties. Barr Rubber Products Co. v. Sun Rubber Co., 425 F.2d 1114, 1126-27 (2d Cir.), cert. denied 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970). As Professor Moore has observed, "(a) person whose rights have been infringed need not join as plaintiffs others whose rights have been 'infringed' by the same conduct," though he may if he so chooses.[12] Under Rule 20, moreover, joinder of plaintiffs "is at the option of the plaintiffs;" it cannot be demanded as a matter of right by the defendant."[13]
 
 
 20
 Joinder of parties falling within the circumstances contemplated by Rule 20 is required only when the person in question comes within the scope of compulsory joinder as prescribed by Rule 19. In contrast to Rule 20, under which proper parties may be joined in certain circumstances because of a common interest in a question of law or fact, even though they have no substantive right to compel joinder, Rule 19 refers only to those parties who should be joined because they are either necessary or indispensable parties to the litigation. Rule 19 thus embodies the more limited purpose of "bring(ing) before the court all persons whose joinder would be desirable for a just adjudication of the action."[14]
 
 
 21
 "The structure of Rule 19," as Professors Wright & Miller have made clear, "reflects the analytical sequence that a court should follow in deciding a party joinder problem."[15] Subdivision (a) of the Rule deals with persons who should be joined if feasible; subdivision (b) then deals with the determination the court should make whenever joinder is not feasible. Consequently, once an issue of a person's compulsory joinder is raised, the court initially must determine in accordance with Rule 19(a) whether:
 
 
 22
 (1) in his absence complete relief cannot be accorded among those already parties, or
 
 
 23
 (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations of his claimed interest.
 
 
 24
 If any of these tests is met, the court is instructed to "order that (the person) be made a party." Difficulties arise, however, in the case of persons who, although they satisfy the requirements of 19(a), cannot be effectively joined because they are not subject to service of process, or their joinder will deprive the court of subject matter jurisdiction, or they have a valid objection to the court's venue after joinder. When, for one of these reasons, the joinder of a person meeting the tests set out in 19(a) is not feasible, only then is the court to apply Rule 19(b) in order to determine whether the action may proceed without that person or must be dismissed, "the absent party being thus regarded as indispensable." "It is important to note," therefore, as Professors Wright & Miller have instructed, "that Rule 19(a) embraces all those persons who should be joined, including those whose joinder is not feasible and who ultimately may be regarded as indispensable under Rule 19(b)."[16] Rule 19(b) itself is applicable only if a person who should be joined under the provisions of Rule 19(a) cannot be made a party for some reason. "By proceeding in this orderly fashion the court will be able to avoid grappling with the difficult question of indispensability whenever it initially decides that the absentee's interest is not sufficient to warrant compelling his joinder."[17]
 
 
 25
 In the present case, there is no dispute that Ivana Field, in her individual capacity, is at least a proper party to the action, inasmuch as she asserts a right to relief against VWAG that arises out of the same occurrence as do the claims of Arthur Field's estate and Michael Field, and presents common questions of law and fact. Were Ivana not a party, therefore, the remaining plaintiffs, if they so chose and Ivana agreed, might be permitted to join Ivana as a party plaintiff. The plaintiffs here seek not to join Ivana to this action, however, but to drop her from it on the ground that she is not indispensable to the litigation, in order to preserve subject matter jurisdiction. And the criteria governing the determination whether Ivana is indispensable, enumerated in Rule 19, are not nearly so broad and encompassing as the "transaction or occurrence test" prescribed in Rule 20 for permissive joinder. Indeed, as Professors Wright & Miller point out, it is the difference in the applicable standards that "distinguishes compulsory joinder from permissive joinder . . . . This difference in standards reflects the fact that the question whether someone should be joined under Rule 19(a) typically raises a much more significant problem than does the question whether the absentee is a proper party who may be joined under Rule 20."[18]
 
 
 26
 The dissent appears not to recognize this crucial, indeed defining, distinction between permissive joinder of proper parties under Rule 20 and compulsory joinder of necessary or indispensable parties under Rule 19. In its view, the mere fact that "VWAG might have to defend itself in a separate action brought by Ivana" arising out of the same occurrence alone satisfies the criteria of Rule 19(a) because, the dissent contends, "(i)n Ivana's absence, the district court could not give complete relief to VWAG." But if Ivana's absence as a party precluded the district court from according "complete relief among the parties," simply because VWAG might later have to defend against a separate action brought by Ivana in her individual capacity, the same shortcoming would exist in practically every case of permissive joinder, and the distinction between Rules 20 and 19 would be rendered practically meaningless. For in just about every case of permissive joinder under Rule 20 the proper party in question, if not joined, would be able to assert rights against the defendant in a separate action.
 
 
 27
 The determination whether "in (a person's) absence complete relief cannot be accorded among those already parties under Rule 19(a)(1)," contrary to the dissent's suggestion, is quite distinct from the question posed by Rule 20 whether the right asserted by a person arises out of the same transaction or occurrence as the claims of the plaintiffs. As the Advisory Committee note to Rule 19 makes clear, "(c)lause 1 stresses the desirability of joining those persons in whose absence the court would be obliged to grant partial or 'hollow' relief rather than complete relief to the parties before the court."[19] This would occur, for instance, when an absent person has a claimed or apparent interest in the same relief sought by the plaintiffs, such that the court would be unable to fashion an effective decree as a result of the absence. For unless the absent party's right to the relief sought by the plaintiffs was also adjudicated, no judgment of the court could divest the person not before the court of the right to have the same claim decided as to him, and the defendant might be faced with judgments that could not both be complied with. The right to separate and individual relief asserted against VWAG by Ivana in her individual capacity, however, even though it arises out of the same occurrence, exists quite apart from the claims asserted by Michael Field and Arthur Field's estate and, if upheld, would impose upon VWAG an obligation separate and distinct from its obligations to the other parties. Complete relief under Rule 19(a)(1) "refers to relief as between the persons already parties, not as between a party and the absent person whose joinder is sought, and mere theoretical considerations of disposing of the whole controversy should not be employed" to dismiss an action "where it appears unlikely that absent persons could be adversely affected."[20] Indeed, to dismiss the action on the ground that Ivana is indispensable would appear "to deny a principal aspect of several liability."[21]
 
 
 28
 It may well be, as the dissent suggests and the district court decided, that the joinder of Ivana to this proceeding would suit VWAG's convenience, since it might minimize the delay, expense, and risks involved in the possibility of having to litigate in two forums against different parties. "The standards for determining whether joinder must be ordered," however, as one federal court has recently observed, "are not the relative conveniences of the parties but those prescribed by Rule 19 . . . ." Bevan v. Columbia Broadcasting System, Inc., 293 F.Supp. 1366, 1369 (S.D.N.Y.1968). Applying that rule to the circumstances of this case, we are persuaded that complete relief can be accorded among the parties in Ivana's absence.
 
 
 29
 If the right of either Michael Field or Arthur Field's estate to relief against VWAG were established, these parties would be awarded a judgment; if their claims are not sustained, their complaint would be dismissed. In either event, the district court will be able to grant complete relief as between the parties without the joinder of Ivana, and, as we have shown above, it is unnecessary to join Ivana as a party in order to enable VWAG to defend against these claims. VWAG, while it may be entitled to contribution or indemnity from Ivana, cannot be subjected to multiple obligations since its liability, if any, will be several.[22] Nor, as Professor Moore has emphasized, does the possibility of a subsequent adjudication that may result in a judgment that is inconsistent as a matter of logic, trigger the application of Rule 19. For when, as alleged here, "several persons are injured by the same tort and proof of damage is individual, the fact that want of estoppel may leave a defendant who has defended successfully against one of the injured parties with the risk that he will be liable to another in a subsequent suit does not make it necessary that all of the punitive plaintiffs to be joined in the same suit, even if (in contrast to the present appeal) there is no jurisdictional inhibition to their joinder."[23]
 
 
 30
 While it is true that the Federal Rules encourage the joinder of parties where such joinder would appear to avoid multiple actions or unnecessary delay and expense, this practice should not penalize bona fide litigants who have a valid cause of action, choose the forum which they think proper, and ask for specific relief. Accordingly, because we find that Ivana is neither a necessary nor an indispensable party as described in Rule 19, we hold that the district court erred in declining to grant the motion to dismiss her as a party in her individual capacity, so as to permit the suit to continue under the diversity jurisdiction of the court.
 
 
 31
 Given the determination that Ivana's absence will not preclude the district court from according complete relief among the parties, the dissent's reliance upon the Supreme Court's discussion of indispensability in Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968), would appear to be misplaced. The analysis in Provident Tradesmens deals with the question whether a person concededly within Rule 19(a) is indispensable under Rule 19(b). 390 U.S. at 107-8, 88 S.Ct. at 736-7. But the question at issue here is whether Ivana is a person who should be joined if feasible under Rule 19(a). As discussed above, Rule 19(b), and thus the tests enunciated in Provident Tradesmens, would be applicable only if Ivana were a person who should be joined under the provisions of Rule 19(a).[24]
 
 III.
 
 32
 Having decided that Ivana Field in her individual capacity is not an indispensable party to this suit, we must next address the jurisdictional implications of Ivana's presence as administratrix of Arthur Field's estate. For if it is the citizenship of the representative rather than the citizenship of those represented that controls for purposes of subject matter jurisdiction, Ivana's presence as administratrix contravenes the complete diversity requirement, even in the absence of her individual claim. Appellants contend, however, that under the circumstances of this case we should look not to the citizenship of the administratrix, but rather to that of the decedent, Arthur Field, in determining diversity.
 
 
 33
 A. The question of whose citizenship controls for purposes of diversity jurisdiction occurs frequently in cases involving administrators, trustees, and executors. Fed.R.Civ.P. 17(a) now codifies the long-established principles that diversity jurisdiction depends upon the citizenship "of the real party in interest," and that administrators, trustees, and executors may sue in their own name without joining the parties for whose benefit the action is brought. But federal courts, and the Supreme Court in particular, have long held in cases in which an administrator, trustee, or executor has control over the litigation that it is the citizenship of the representative and not the decedent or beneficiaries that is determinative of federal jurisdiction. E. g., Navarro Savings Assn. v. Lee, --- U.S. ----, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980); Mecom v. Fitzsimmons Drilling Co., 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233 (1931); Chappedelaine v. Dechenaux, 8 U.S. (4 Cranch) 306, 2 L.Ed. 629 (1808). Thus, in Mecom, a suit brought by an administrator for damages under a wrongful death statute, the Court declared that "where an administrator is charged with the responsibility for the conduct or settlement of such suit and the distribution of its proceeds to the persons entitled under the statute, and is liable upon his official bond for failure to act with diligence and fidelity, he is the real party in interest, and his citizenship rather than that of the beneficiaries is determinative of federal jurisdiction." 284 U.S. at 186, 52 S.Ct. at 86.
 
 
 34
 As administratrix of Arthur Field's estate, Ivana Field did in fact have control over the litigation of the claim brought on the estate's behalf. Thus, in accordance with the general rule, it would appear that she is to be deemed the real party in interest and that her citizenship should thus be determinative for jurisdictional purposes.[25] Appellants contend, however, that this general rule is not inflexible and that it was not intended to govern with unvarying application. The primary support offered by appellants in this regard is the decision of the court of Appeals for the Fourth Circuit in Miller v. Perry, 456 F.2d 63 (1972), which held that the citizenship of the beneficiaries, and not the representative, was controlling for diversity purposes. The justification for this holding, however, was that North Carolina had a law which required a resident ancillary administrator to be appointed as the real party in interest in the litigation, even though there was an administrator who was duly qualified in Florida whose action against the North Carolina defendant would have met the requirements of the diversity statute. The court's actual holding was rather narrow:
 
 
 35
 When, as here, a resident ancillary administrator is required to represent the interests of non-citizen beneficiaries by virtue of the laws of the state in which the claim arose, and his duties are limited as those imposed upon him by North Carolina, the citizenship of the beneficiaries is controlling for diversity purposes. 456 F.2d at 67.
 
 
 36
 Those circumstances, of course, are not present here. But even if we were to apply the result reached in Miller to the facts in this case, and look to the citizenship of the beneficiaries rather than the representative, that approach would not preserve diversity jurisdiction since Ivana, an alien, is a member of the class of beneficiaries. Recognizing this, appellants are thus forced to argue that the "unique facts of this case" require us to look not to the citizenship of either the representative or the beneficiaries of the estate but to that of the decedent. The sole unique "fact" to which appellants refer us, however, is their allegation that under the applicable law of New York only Ivana, an alien, could qualify as administratrix of Arthur Field's estate. And while New York apparently requires that letters of administration be issued in the first instance to a distributee's spouse, appellants at the same time tell us that Ivana has now renounced her right to act as administratrix and that a petition has been granted by the New York Surrogate Court replacing Ivana with Lucille Field, the decedent's former spouse. Indeed, they ask us, alternatively, to permit substitution of Lucille as administratrix for purposes of this suit. It would seem, therefore, that Ivana Field was not, in fact, the only one who could qualify as the administratrix of Arthur Field's estate.
 
 
 37
 In addition, appellants point to the recent proposal by the American Law Institute, which would attribute to a representative the citizenship of the decedent, infant, or incompetent whom he or she represents. We think there is considerable merit to such proposal.[26] And a legislative solution similar to that advocated by the Institute has been praised by courts and commentators alike as providing "a more satisfactory solution" than the present rule.[27] In spite of such approbation, however, Congress has not yet enacted the proposal. Under the circumstances, therefore, we are not now prepared to fashion unilaterally an exception, no matter how desirable, to the settled rule that diversity of citizenship depends upon the citizenship of the representative controlling the action as the real party in interest.
 
 
 38
 B. Anticipating our decision that the citizenship of the representative who controls the litigation is controlling for the purpose of diversity jurisdiction, appellants claim alternatively that the district court erred by refusing to permit the appellants to substitute Lucille Field for Ivana Field as administratrix of the estate of Arthur Field, and to amend the pleadings accordingly. In this manner, appellants had hoped to remedy the lack of diversity by replacing a non-diverse claimant with a diverse one, with retroactive effect to the time the action was commenced. The district court refused to permit either the substitution or the amendment, and we find no error in these rulings.
 
 
 39
 It has long been established in federal courts, as the district judge pointed out, that jurisdiction is tested by the facts as they existed at the time the action was commenced. Smith v. Sperling, 354 U.S. 91, 93 n.1, 77 S.Ct. 1112, 1113 n.1, 1 L.Ed.2d 1205 (1957); Anderson v. Watt, 138 U.S. 694, 702-03, 11 S.Ct. 449, 451, 34 L.Ed. 1078 (1891); McNello v. John B. Kelly, Inc., 283 F.2d 96, 99 n.1 (3rd Cir. 1960); cf. Garrett v. Bamford, 582 F.2d 810 (3rd Cir. 1978). (T)he jurisdiction of the court, declared Chief Justice Marshall long ago in Mullen v. Torrance, 22 U.S. (9 Wheat.) 536, 538, 6 L.Ed. 154 (1824), "depends upon the state of things at the time of the action brought." Thus, if diversity of citizenship did not exist at the time the action was filed, it cannot be created retroactively by a subsequent change of domicile by one of the parties. See e. g., Krasnov v. Dinan, 465 F.2d 1298 (3rd Cir. 1972); Slaughter v. Toye Bros. Yellow Cab, 359 F.2d 954 (5th Cir. 1966); Lyons v. Weltmer, 174 F.2d 473 (4th Cir. 1949). As Professors Wright and Miller have concluded, "this rule seems sound and consistent with the bright line policy of determining diversity as of the commencement of the action."[28]
 
 
 40
 By parity of reasoning, jurisdiction cannot be conferred retroactively by the subsequent substitution of a diverse claimant for a non-diverse party. In Anderson v. Watt, 138 U.S. 694, 11 S.Ct. 449, 34 L.Ed. 1078 (1891), for instance, the dual executors of the estate of a New York resident alleged that they were both citizens of New York and brought a diversity action against defendants whom they alleged to be citizens of Florida. Subsequently, it was determined that one of the defendants was, in fact, a citizen of New York. In an attempt to preserve diversity jurisdiction, the plaintiffs thereupon applied successfully to have the letters testamentary that had been issued to one of the plaintiff-executors, Faber, revoked. They then sought to amend their pleadings to drop Faber as a party-plaintiff and, further, to aver that the remaining plaintiff-executor, Watt, was actually a citizen of Great Britain. Accepting the averment that Watt was in fact not a citizen of New York but of a foreign state, the Supreme Court nevertheless held that the circuit court was without jurisdiction on the ground that, even though Watt then was the sole executor of the estate, he was at the time the suit was filed only one of two executors and could not at that time have maintained the suit on his own. As the Court stated:
 
 
 41
 the difficulty with this attempt to obviate the fatal defect in jurisdiction was that the record showed that Watt was not the sole surviving executor (of the deceased) when the bill was filed . . . . It therefore appeared that Watt could not have maintained the bill as amended . . . when the bill as originally framed was filed, and jurisdiction could no more be given to the Circuit Court by the amendment (dismissing the non-diverse party) than if a citizen of Florida had sued another in that court, and subsequently sought to give it jurisdiction by removing from the State. 138 U.S. at 708, 11 S.Ct. at 453.
 
 
 42
 In effect, the appellants here ask us to permit them to accomplish essentially what the Supreme Court prohibited the appellants from doing in Anderson v. Watt. In this case, Ivana Field was the duly appointed administratrix of Arthur Field's estate when this suit was commenced, and as such she was the only one qualified to assert a claim on behalf of the estate at that time. Because Ivana was then a citizen of a foreign state, diversity jurisdiction could not have existed over this claim when the suit was filed. And it cannot now be created and conferred retroactively by the subsequent substitution of Lucille Field as administratrix for the estate, although it may be that in such capacity she may bring a new action on the estate's behalf.
 
 
 43
 The dissent concedes that the Supreme Court's rationale in Anderson v. Watt that jurisdiction is to be tested by the facts as they existed at the time the action was brought supports the decision we reach here; but it argues that Anderson v. Watt is no longer controlling in light of 28 U.S.C. § 1653 (1976), which provides in part that: "Defective allegations of jurisdiction may be amended upon terms in the trial or appellate courts" (emphasis added). Relying solely on this Court's prior decision construing § 1653 in Moore v. Coats Co., 270 F.2d 410 (3d Cir. 1959), the dissent would hold that jurisdiction is now to be determined not "by the condition of the parties at the commencement of the suit," as the Supreme Court instructed in Anderson v. Watt, 138 U.S. at 702-3, 11 S.Ct. at 451, but instead by the facts as they exist at the time of the motion to amend the pleadings. Upon analysis, however, neither the statute nor the decision support the dissent's contention.
 
 
 44
 To begin with, the principle that jurisdiction is to be tested by the status of the parties at the commencement of the suit, though enunciated in Anderson v. Watt prior to the enactment of the predecessor statute to § 1653, P.L.No. 63-278, ch. 90, 38 Stat. 956 (1915), has been repeatedly and consistently reaffirmed since that enactment by the Supreme Court, this Court, and most, if not all, of our sister courts of appeals. E. g., Smith v. Sperling, 354 U.S. 91, 93 n.1, 77 S.Ct. 1112, 1113, n.1, 1 L.Ed.2d 1205 (1957); Wichita R. R. & Light Co. v. Pub. Util. Comm's, 260 U.S. 48, 54, 43 S.Ct. 51, 53, 67 L.Ed. 124 (1922); McNello v. John B. Kelly, Inc., 283 F.2d 96, 99 n.1 (3d Cir. 1966); Mullins v. Beatrice Pocahontas Co., 489 F.2d 260, 261 (4th Cir. 1974); American Foundation, Inc. v. Mountain Lake Corp., 454 F.2d 200, 202 (5th Cir. 1972); Television Reception Corp. v. Dunbar, 426 F.2d 174, 177 (6th Cir. 1970); Johnston v. Cordell Nat. Bank, 421 F.2d 1310, 1311 (10th Cir. 1970); Great Am. Ins. Co. v. Louis Lesser Enterprises, Inc., 353 F.2d 997, 1000 (8th Cir. 1965); Julien v. Sarkes Tarzian, Inc., 352 F.2d 845, 846 (7th Cir. 1965). Indeed, no decision to the contrary has been brought to our attention.
 
 
 45
 Even more critical to the dissent's position, however, our prior decision in Moore v. Coats Co., far from mandating a different result, in fact represents an application of the basic principle that the critical date for determining the status of a party for jurisdictional purposes is the date of the original complaint. In Moore, the plaintiff sued the Coats Company and others for patent infringement. The original defendants moved to dismiss the action on the ground that venue was lacking because none of the defendants either resided in the district or committed acts of infringement and had a regular and established place of business there. In an attempt to cure this defect, Moore sought to amend his complaint to add an additional defendant, Hennessy Co., which satisfied the requirements of the venue statute because Hennessy was alleged to have had a place of business in the district. We permitted the amendment under § 1653 and held, accordingly, that the requirements of venue jurisdiction had been met as to Hennessy.
 
 
 46
 There was no indication whatsoever in Moore, however, that Hennessy did not in fact have a place of business in the district at the time the original complaint was filed. To the contrary, Chief Judge Biggs, writing for the Court, specifically stated in Moore that there could "be no question but that . . . the suit could (have been) maintained had that company (Hennessy) been named as a party defendant in the original complaint." 270 F.2d at 411. Inasmuch as the party added in Moore thus was presumed to have had a place of business in the district at the time that action was commenced, our decision here is entirely consistent with both the opinion in Moore as well as its construction of § 1653.
 
 
 47
 If Lucille Field had in fact been authorized to maintain a claim on behalf of Arthur Field's estate at the time this action was commenced, the plaintiffs would have been free under § 1653 to amend their complaint to substitute Lucille as the party representative of the estate. But § 1653, while designed to permit amendment broadly to avoid dismissal of suits on technical grounds, authorizes federal courts to allow amendment only of defective allegations of jurisdiction; it does not provide a remedy for defective jurisdiction itself.
 
 
 48
 Contrary to the dissent's intimation, the jurisdictional defect in this appeal has to do not with allegations but with the status of the parties. At the critical date when the complaint was filed, Ivana Field was the only authorized representative of Arthur Field's estate. As such, she was the only one qualified to assert a claim on behalf of the estate at that time. Because Lucille Field was not then a qualified representative of Arthur Field's estate, however, she lacked the authority to maintain a claim on the estate's behalf even if she had been named as a representative in the original complaint. What the appellants thus attempt to do here, then, is not simply to amend a defective allegation of jurisdiction, but rather effectively to change the citizenship of the estate's representative by substituting a diverse party for a non-diverse one. This endeavor to evade the jurisdictional prerequisites of the federal court is essentially equivalent to an attempt to preserve diversity jurisdiction by changing one's domicile from a non-diverse location to a diverse one subsequent to the filing of the complaint, and is similarly ineffective. Not only is this attempt unauthorized by § 1653, it is also inconsistent with the fundamental principle of procedure, uniformly adhered to by the federal courts, that jurisdiction is to be tested by the conditions of the parties at the commencement of the suit.
 
 
 49
 For similar reasons, we believe that appellants' reliance on Fed.R.Civ.P. 21 is also misplaced. As noted above,[29] this rule authorizes a court to drop or add misjoined or nonjoined parties at any stage of an action on such terms as are just. But again, what the appellants endeavor to accomplish here is not to drop a misjoined party or to add a nonjoined party, but to substitute a diverse claimant for a non-diverse plaintiff. This kind of practice is simply not within the scope of Rule 21, which is not a rule providing for the substitution of parties. Schwarz v. Metropolitan Life Ins. Co., 2 F.R.D. 167 (D.C.Mass.1941). Rule 21 was enacted to minimize the harsh effects of common-law adherence to technical rules of joinder. Halladay v. Verschoor, 381 F.2d 100 (8th Cir. 1967). It was not adopted, as Judge Lumbard has stated for the Court of Appeals for the Second Circuit, "in order to deal with problems of defective federal jurisdiction." Kerr v. Compagnie De Ultramar, 250 F.2d 860, 864 (2nd Cir. 1958).
 
 IV.
 
 50
 In sum, we hold that Ivana Field, in her individual action against VWAG, is not an indispensable party to the claims brought on behalf of Arthur and Michael Field, and that the district court therefore erred in refusing her to dismiss her individual claim. But with regard to the claim brought by Ivana Field as administratrix of Arthur Field's estate, we hold that it is the citizenship of the administratrix, not the decedent, that controls for purposes of diversity jurisdiction. Accordingly, we will affirm the district court's order dismissing Ivana Field's individual claim as well as the claim brought by her in her capacity as administratrix of Arthur Field's estate. In addition, we will affirm the district court's refusal to allow the proposed amendment substituting Lucille Field for Ivana Field as the administratrix of Arthur Field's estate.
 
 
 51
 As to Michael Field's separate and individual claim by his natural mother and guardian, Lucille Field, however, we will reverse the dismissal order because the requisite diversity of citizenship exists between her and VWAG. The case will be remanded for further proceedings consistent with this opinion.
 
 
 52
 SEITZ, Chief Judge, dissenting.
 
 
 53
 I agree with the majority that Ivana's presence as a plaintiff destroyed the complete diversity necessary for the district court's jurisdiction. I also agree that the citizenship of Arthur's estate is that of the administratrix rather than of the deceased. However, I am constrained to disagree with the majority's disposition of two issues: the holding that Ivana in her individual capacity is not an indispensable party and the holding that the complaint may not be amended to substitute Lucille as the administratrix of Arthur's estate.
 
 I.
 
 54
 On the first issue the majority correctly holds that Ivana's status as an indispensable party cannot rest on VWAG's possible assertion of her negligence as a defense against the claims of Michael and Lucille. However, this conclusion does not fully dispose of the issue.
 
 
 55
 The district court cited a second basis for its determination albeit in a cursory manner: "Additionally, to permit Ivana to pursue her action in another court and Michael and Lucille to proceed here would force VWAG to defend the same claim in two different actions." The court added that the plaintiffs' claims would not be time-barred in other forums and mentioned specifically Rhode Island and Italy.
 
 
 56
 The applicable rule of procedure is Fed.R.Civ.P. 19. Under rule 19(a)(1), a party should be joined, if feasible, when "in his absence complete relief cannot be accorded among those already parties." The interests underlying this rule include an interest "in avoiding repeated lawsuits on the same essential subject matter." Fed.R.Civ.P. 19(a)(1) (Advisory Committee note to 1966 amendment), 39 F.R.D. 91 (1966). In Ivana's absence, the district court could not give complete relief to VWAG because VWAG might have to defend itself in a separate action brought by Ivana on the same claims. Ivana's joinder is not feasible because it would destroy complete diversity. In this situation, rule 19(b) provides that "the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable."
 
 
 57
 The Supreme Court provided a structure for analysis on the indispensability question in Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968). The court identified four sets of interests that should guide a district court's sense of "equity and good conscience:"
 
 
 58
 First, the plaintiff has an interest in having a forum. . . . Second, the defendant may properly wish to avoid multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another. . . . Third, there is the interest of the outsider whom it would have been desirable to join. . . . Fourth, there remains the interest of the courts and the public in complete, consistent, and efficient settlement of controversies.
 
 
 59
 Id. at 109-11, 88 S.Ct. at 738.
 
 
 60
 In the present case, these interests line up in the following manner: If the district court requires Ivana's joinder, complete diversity will be lost and the entire complaint will be dismissed. Michael and Lucille will be left to sue in some other forum, presumably either Rhode Island or Italy. This result is an interference with, but not a complete deprivation of the first interest, that of the plaintiffs in a forum. On the other hand, if the district court fails to require Ivana's joinder, VWAG may have to defend against the claims of this suit in two separate actions. Any favorable judgment that it might obtain on the claims of Michael and Lucille would have no collateral estoppel effect in Ivana's suit. This result works a detriment to the second and fourth interests, those of the defendant and the public in avoiding multiple litigation.
 
 
 61
 Provident Tradesmens calls for a balancing of these competing interests to resolve the issue of indispensability. However, the record compiled by the district court is not sufficient to permit a just resolution, for two reasons.
 
 
 62
 First, the district court's conclusion that Rhode Island and Italy are available forums does not rest on adequate findings of fact. The court considered only whether appellants' claims would be time-barred in these forums. It made no inquiry into whether VWAG would be amenable to service or process in either location. Plainly, a forum is not available to a plaintiff if that forum does not afford him the ability to obtain jurisdiction over the defendant.
 
 
 63
 On the same point, the court's conclusion that an action would not be time-barred in Rhode Island is not free from doubt. Rhode Island limits actions to recover personal injuries, including actions like the present one involving claims of products liability, to a period of three years from the time of injury. R.I.Gen.Laws § 9-1-14 (Supp.1977); see Plouffe v. Goodyear Tire and Rubber Co., 373 A.2d 492 (R.I.1977). For appellants' claims, the three-year period ran out on August 13, 1978, eight months before the district court dismissed their complaint.
 
 
 64
 One provision of Rhode Island law might save appellants' right to sue. It provides that if a suit initially is filed within the applicable limitations period, as this suit was, and is dismissed for various reasons including a lack of subject-matter jurisdiction, the plaintiff may file a new action on the same claim within one year of the dismissal. R.I.Gen.Laws § 9-1-22 (1956). However, neither the language of the statute nor any decisions of the Rhode Island courts hold that this savings clause applies to a suit filed initially in a federal court or in a court in another state. Other states with similar provisions have not always applied them in these situations. See, e. g., Baker v. Commercial Travelers Mutual Accident Ass'n., 3 App.Div.2d 265, 161 N.Y.S.2d 332 (1957); Ivester v. Southern Ry., 61 Ga.App. 364, 6 S.E.2d 214 (1939). The district court should not have concluded that appellants' claims would not have been time-barred in Rhode Island without first considering whether a Rhode Island court would apply the state's savings clause to a suit filed initially in the District of New Jersey.
 
 
 65
 The determination of whether Rhode Island or Italy is an available forum is a critical prerequisite to a proper balancing of the Provident Tradesmens set of interests. If no forum is available to hear the claims of Michael and Lucille, then a dismissal of the complaint will completely deprive them of their interest in a forum. If Italy is the only available forum, then their interest will be protected but with the imposition of obvious burdens on them. Finally, if no alternative forum is available to Ivana, then VWAG faces no real danger of multiple litigation.
 
 
 66
 The second insufficiency in the record is the lack of any consideration of the degree of the burden that would be imposed on VWAG and the courts should VWAG have to defend against appellants' claims in two separate actions. Given recent experience with products liability litigation, this burden might be substantial. However, nothing appears in the record on this matter. Because Provident Tradesmens requires a balancing of interests, the district court should have assessed the probable burden of multiple litigation.
 
 
 67
 Therefore, the district court did not make adequate findings to support its conclusion that Ivana is an indispensable party. The same deficiencies in the record should prevent this court from reaching any final resolution of the issue. We should not hold that Ivana must be joined as a party without a determination of whether Michael and Lucille can sue VWAG in another forum. At the same time, we should not hold that the suit may proceed without Ivana absent a determination that VWAG and the courts will not be left with a risk of excessively burdensome multiple litigation. I would vacate the order of the district court and remand for consideration of these matters. Consequently, I do not join the majority in its holding that Ivana is not an indispensable party.II.
 
 
 68
 My second disagreement with the majority concerns the district court's refusal to permit an amendment of the complaint that would reflect Lucille's replacement of Ivana as the administratrix of Arthur's estate. This amendment would correct a defect in the allegations of diversity jurisdiction. With Ivana, a citizen of Czechoslovakia, as administratrix, diversity of citizenship between the estate and VWAG was absent. The substitution of Lucille, a citizen of Rhode Island, provided the diversity.[1] I find authorization for this amendment in 28 U.S.C. § 1653 (1976), which provides: "Defective allegations of jurisdiction may be amended upon terms, in the trial or appellate courts."
 
 
 69
 A precedent for this application of § 1653 is Moore v. Coats Co., 270 F.2d 410 (3d Cir. 1959). There, the defect was a lack of venue. The plaintiff sued several defendants for patent infringement. However, he could not establish for any of them the facts required for venue in the district court residence in the district or acts of infringement and a place of business in the district. 28 U.S.C. § 1400(b) (1976). The defendants moved to dismiss the complaint on this ground. Before the district court could rule on the motion, the plaintiff amended his complaint to add an additional defendant, who satisfied the requirements of the venue statute, and to allege a cause of action of contributory infringement against this defendant. This court held that § 1653 authorized the amendment and allowed the use of an amendment of the complaint to create venue that previously had been absent.
 
 
 70
 Although Moore involved venue rather than subject-matter jurisdiction, the court relied on prior cases involving subject-matter jurisdiction and concluded that the two should be treated similarly under § 1653. 270 F.2d at 412. I see no persuasive distinction between the amendment permitted in Moore and the one considered here. In particular, I find that neither of the majority's reasons for prohibiting the amendment is valid in light of Moore.
 
 
 71
 The majority's first reason is that jurisdiction lacking at the filing of a complaint cannot be supplied by subsequent amendment. However, Moore read § 1653 to permit this use of an amendment. When the complaint in that case was filed, venue actually was lacking. Only subsequent changes, the joinder of a new party and the allegation of a new cause of action, could establish venue. Moore permitted an amendment to reflect such changes.
 
 
 72
 The Supreme Court's decision in Anderson v. Watt, 138 U.S. 694, 11 S.Ct. 449, 34 L.Ed. 1078 (1891), appears to support the majority on this point. However, I believe that it is no longer controlling. Anderson was decided prior to Congress's enactment of the predecessor statute to § 1653. See P.L. No. 63-278, ch. 90, 38 Stat. 956 (1915). We have interpreted § 1653 to permit jurisdictional amendments despite the absence of jurisdiction at the commencement of a suit. I can find no decision of the Supreme Court or of this court subsequent to the enactment of this predecessor statute that prohibits this type of amendment.
 
 
 73
 The majority's second reason is that § 1653 applies only to formal defects in jurisdictional allegations, not to substantive defects. The defect in Moore was in no sense formal. With the line-up of defendants in plaintiff's original complaint, the underlying facts necessary to confer venue on the district court simply were not present.
 
 
 74
 In general, I am not inclined to embrace any fine distinctions that might be made between this case and Moore. There, the court called for a liberal application of § 1653 for the purpose of avoiding dismissals that result only in the refiling of a properly amended complaint. 270 F.2d at 412. That may well be the result in this case. However, dismissal in this case may lead to a problem that did not arise in Moore: Statutes of limitation may bar a refiling of the estate's claims in many, if not all, forums. I can think of no persuasive reason for attaching such a consequence to defects in jurisdictional allegations when the defects might be cured by amendment of the complaint. Rather, I read Moore's policy of liberal applications of § 1653 to require courts to avoid this consequence.
 
 
 75
 In summary, I find the majority's holding inconsistent with Moore v. Coats Co., supra. This panel lacks the authority to overrule a prior panel. See Third Circuit Internal Operating Procedures Ch. VIII(C). Accordingly, I dissent.
 
 
 
 [1]
 Jackson v. Twentyman, 2 Pet. (27 U.S.) 136, 7 L.Ed. 374 (1829); Hodgson v. Bowerbank, 5 Cranch (9 U.S.) 303, 3 L.Ed. 108 (1809)
 
 
 [2]
 See 13 C. Wright, A. Miller & Cooper, Federal Practice and Procedure § 3604, at 607-08 (1975) (citing cases) (hereinafter cited as Wright, Miller & Cooper)
 
 
 [3]
 Act of March 3, 1875, § 1, 18 Stat. 470
 
 
 [4]
 28 U.S.C. § 1332(a)(2) (1976), as amended by Foreign Sovereign Immunities Act of 1976, Pub.L. No. 94-583, § 3, 90 Stat. 2891
 
 
 [5]
 The district court's authority to dismiss non-diverse parties derives from F.R.C.P. 21 (Misjoinder and Non-joinder of Parties) which provides:
 Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any state of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.
 
 
 [6]
 3A Moore's Federal Practice P 21.03(2), at 21-14 (2d ed. 1979) (hereinafter cited as Moore's)
 
 
 [7]
 VWAG asserts that the possibility that Ivana is a joint tort-feasor is sufficient to establish her indispensability. But joint tort-feasors are merely permissive parties to an action, they are not indispensable. As the Court of Appeals for the Fifth Circuit recently held, "Rule 19, as amended in 1966, was not meant to unsettle the well-established authority to the effect that joint tort-feasors or coconspirators are not persons whose absence from a case will result in dismissal for nonjoinder." Herpich v. Wallace, 430 F.2d 792, 817 (5th Cir. 1970)
 
 
 [8]
 We, of course, make no determination whether VWAG may in fact have such a right against Ivana Field under the governing law, but note only that impleader may be available when there is a question of fact as to whether the parties are joint tort-feasors or whether the liability is primary or secondary, so that the defendant may be entitled to indemnity from the third party. 3 Moore's P 14.11 at 14-320
 
 
 [9]
 VWAG asserts that impleader is not available here because Ivana is a party and Federal Rules of Civil Procedure 14(a) explicitly refers to "a person not a party to the action" in describing those who may be brought in. In view of our determination that Ivana's claim in her individual capacity is not indispensable to the suit and should therefore be dismissed, however, the language of Rule 14(a) would not appear to pose a problem. In any event, most courts that have considered the problem have resolved it by using 14(a) in conjunction with their broad severance power under Civil Rule 21. See 3 Moore's P 14.14, at 14-336 to 14-338 (citing cases); 6 Wright & Miller, P 1446, at 255-56 (same). Alternatively, it is possible to construe the provision "a person not a party to the action" to mean a person not a party to the separate action for which impleader is sought. By this means, impleader has simply been allowed as an initial matter under the authority of Rule 14(a) without going through the proposed ritual of severance, impleader, and consolidation. United States for the use of Westinghouse Supply Co. v. Nicholas, 28 F.R.D. 8 (D.C.Minn.1961)
 
 
 [10]
 6 Wright & Miller, § 1444, at 223 (citing cases)
 
 
 [11]
 7 Wright & Miller, § 1656, at 281 (citing cases)
 
 
 [12]
 3A Moore's § 19.07(1), at 19-112 n.18
 
 
 [13]
 Id. § 19.07(1), at 20-33
 
 
 [14]
 7 Wright & Miller, § 1604, at 32
 
 
 [15]
 Id. § 1604, at 35
 
 
 [16]
 Id. § 1604, at 32 (citing cases)
 
 
 [17]
 Id. § 1604, at 36
 
 
 [18]
 Id. § 1604, at 33 (citing cases)
 
 
 [19]
 28 U.S.C.A. Fed.R.Civ.P. 19, at 105 (1972)
 
 
 [20]
 3A Moore's § 19.07-1(2), at 19-128 (citing cases)
 
 
 [21]
 Id. § 19.07-1(e.-2), at 91-149 n.45
 
 
 [22]
 Id
 
 
 [23]
 Id. § 1907-1(2.-2), at 19-148 (citing cases)
 
 
 [24]
 See 3A Moore's § 19.07-1(2.2), at 19-149 n.45
 
 
 [25]
 13 Wright, Miller & Cooper, § 3606, at 632
 
 
 [26]
 American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts, Official Draft, 1969, § 1301(1)(4)
 
 
 [27]
 E. g., Miller v. Perry, 456 F.2d 63, 67-68 (4th Cir. 1972); accord, 13 Wright, Miller & Cooper § 3607, at 638-39
 
 
 [28]
 Wright & Miller, § 3608, at 661-62
 
 
 [29]
 See note 5 supra
 
 
 [1]
 Appellants argue that this change constitutes a collusive manufacture of jurisdiction, prohibited by 28 U.S.C. § 1359 (1976). Although this argument may have some merit, it should not affect our decisions on the issues of this appeal. Collusive manufacture of jurisdiction is an issue of fact to be decided in the first instance by the district court. McSparran v. Weist, 402 F.2d 867, 876-77 (3d Cir. 1968), cert. denied, 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217 (1969). Here the district court made no findings on whether this change was an improper attempt to manufacture diversity of citizenship. I would leave the matter for consideration on remand