# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 8, 2010       Decided January 18, 2011

No. 08-5044

IN RE: LORAZEPAM & CLORAZEPATE ANTITRUST LITIGATION,

BLUE CROSS & BLUE SHIELD OF MASSACHUSETTS, ET AL.,
APPELLEES

v.

MYLAN LABORATORIES, INC. AND MYLAN
PHARMACEUTICALS, INC.,
APPELLANTS

———

Consolidated with 08-5045

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:99-mc-00276)

———

*Jonathan M. Jacobson* argued the cause for appellants.
With him on the briefs were *Seth C. Silber*, *D. Bruce Hoffman*,
and *Ryan A. Shores*. *Neil K. Gilman* entered an appearance.

*Martin R. Lueck* argued the cause for appellees. With him
on the brief were *Sara A. Poulos*, *James R. Safley*, *Sarah E.*

*Hudleston*, *Robert T. Rhoad*, and *Ryan C. Tisch*. *Jeffrey Downey* and *Bethany M. Wimsatt* entered appearances.

Before: SENTELLE, *Chief Judge*, WILLIAMS and RANDOLPH, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* RANDOLPH.

RANDOLPH, *Senior Circuit Judge*: This is an appeal from the judgment of the district court, entered after a jury trial, awarding plaintiffs $76,823,943. The plaintiffs invoked diversity jurisdiction and alleged violations of state antitrust laws. Our opinion deals only with defendants' motion on appeal to dismiss for lack of jurisdiction.

Plaintiffs are four health insurance companies. They sued Mylan, a manufacturer of generic drugs, and two other companies engaged in the business of selling chemicals for pharmaceuticals. In support of diversity jurisdiction, plaintiffs alleged that they were citizens of Minnesota, Massachusetts and Illinois, and that defendants were citizens of Delaware, Pennsylvania, New York, New Jersey and West Virginia. Their principal claim, sounding exclusively in state law, was that defendants entered into exclusive licensing agreements enabling Mylan to raise the prices the insurance companies paid for two prescription anti-anxiety medications.

The insurance companies sued, in their words, "on behalf of themselves and as claims administrators for their self-funded customers." In the insurance industry, "self-funded customers" are entities—typically large corporations—providing health benefits directly to their employees using their own funds. *See generally* Allison K. Hoffman, *Oil and Water: Mixing Individual Mandates, Fragmented Markets, and Health Reform*, 36 AM.

J.L. & MED. 7, 17-18 (2010). These entities contract with insurance companies such as plaintiffs, who provide claims-processing and other services to them in plaintiffs' role as "third-party administrators." It is the self-funded customers who bear the financial risks associated with providing insurance coverage.

On the eve of trial, Mylan and its co-defendants filed a motion challenging the insurance companies' authority to bring damages claims on behalf of their self-funded customers. The district court first granted the motion but later allowed the claims to proceed under Rule 17 of the Federal Rules of Civil Procedure. Rule 17(a)(1) requires every action to "be prosecuted in the name of the real party in interest." The court, however, "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3).

The district court found that the insurance companies were not the real parties in interest "with respect to the claims for damages suffered by their self-funded customers." But it allowed the insurance companies to seek ratification of the claims. To do so, the insurance companies sent letters to their self-funded customers, giving them about a week to respond. The letters stated that if the customer did not opt out, it will be deemed to have consented to the insurance companies' representing it and would be bound by the result of the litigation. (We express no opinion on the validity of this ratification procedure.)

The suit proceeded to trial. The jury found Mylan and its co-defendants liable and determined that their violations were willful. Judgment was entered, and this appeal followed.

After the parties had filed their briefs, and a few days before oral argument, defendants filed a motion to dismiss, arguing for the first time that the district court lacked jurisdiction because at least one (Minnesota Mining and Manufacturing Corporation (3M))—and potentially more—of plaintiffs' self-funded customers were from the same state as at least one of the defendants. The existence of these customers, defendants argued, destroyed "complete diversity" and stripped the court of power to hear the case.

The first question this argument raises is whether plaintiffs' self-funded customers must be counted as parties for diversity of citizenship purposes. We think they must. The claims of the self-funded customers were asserted at the outset. Those customers, not the named plaintiffs, were the ones who felt the effect of defendants' alleged violations with regard to the claims asserted on their behalf. And they were the ones who had the right to sue under the substantive law. *See, e.g.*, Mass. Gen. Laws ch. 93A § 9. The plaintiff insurance companies no longer contend that the contracts with their self-funded customers validly assigned the asserted claims to them. At most, plaintiffs' authority extended to acting as agent for the self-funded customers in recovering damages on their claims. *See Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17-18 (2d Cir. 1997). The self-funded customers are therefore the "real and substantial" parties with respect to the claims asserted on their behalf. *See Associated Ins. Mgmt. Corp. v. Ark. Gen. Agency*, 149 F.3d 794, 796 (8th Cir. 1998); *Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d 857, 862 (2d Cir. 1995). As such, they must be treated as parties for diversity purposes. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-61 (1980); *Associated Ins. Mgmt. Corp.*, 149 F.3d at 796.

The effect of the self-funded customers on the district court's diversity jurisdiction turns on principles established in

three Supreme Court decisions dating from the early 1800's. The first, *Capron v. Van Noordan*, 6 U.S. (2 Cranch) 126 (1804), was a diversity action for trespass. The complaint alleged that the defendant was a citizen of North Carolina, but it did not allege that the plaintiff was a citizen of a different state. After verdict for the defendant, the plaintiff appealed on the ground that his complaint was jurisdictionally defective. The Supreme Court agreed and set aside the judgment. The absence of jurisdiction, the Court held, could be raised for the first time on appeal even by the party who invoked federal jurisdiction. That a party may raise jurisdictional issues for the first time on appeal has been repeatedly reaffirmed. *See, e.g.*, *Mansfield, Coldwater & L. M. Ry. v. Swan*, 111 U.S. 379, 382-83 (1884); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-96 (1998); *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570-71 (2004).

The plaintiffs here complain that defendants were derelict in not raising their jurisdictional objection at an earlier stage. The defendants all but admit this. There are approximately 1,400 of these self-funded customers. Counsel for the defendants explains that only when he began preparing for oral argument did he realize their significance for diversity purposes. As far as jurisdiction is concerned, it does not matter if he should have recognized this sooner. *Capron* holds that the parties cannot confer jurisdiction by consent. A corollary, long established, is that a party does not waive a jurisdictional objection by failing to raise it, at least so long as the jurisdictional defect appears on the face of the record. *See Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982); Dan B. Dobbs, *Beyond Bootstrap: Foreclosing the Issue of Subject-Matter Jurisdiction Before Final Judgment*, 51 MINN. L. REV. 491, 507-24 (1967).

The second case is *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806). Although the Court's opinion was short and obscure, it has come to mean that, under the diversity statute (now 28 U.S.C. § 1332), "diversity jurisdiction does not exist unless *each* defendant is a citizen of a different state from *each* plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978). Thus the presence of just one nondiverse plaintiff—here 3M—destroys diversity jurisdiction under § 1332.

Plaintiffs do not dispute this point, but they invoke the supplemental jurisdiction statute, codified at 28 U.S.C. § 1367,[1]

---

[1] 28 U.S.C. § 1367 provides, in part:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332. . . ..

to avoid its consequences.  Their argument is that once the district court had jurisdiction (under § 1332) over claims between the named plaintiffs and the defendants, the district court could exercise supplemental jurisdiction over claims of the self-funded customers.  In support, plaintiffs cite *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546 (2005).  The Court there held that § 1367 authorized jurisdiction over claims of plaintiffs who did not meet § 1332's amount-in-controversy requirement as long as those claims were part of the same Article III "case or controversy" as the claims of plaintiffs who met all of the requirements of § 1332(a).  *Id.* at 549.  In doing so, the Court determined that Congress, in enacting § 1367, implicitly overruled Supreme Court precedent that had denied jurisdiction over such claims.  *Id.* at 569-71.

Plaintiffs' reading of *Allapattah* would, in effect, abolish the  complete diversity requirement of *Strawbridge v. Curtiss.* Whenever a claim is brought by one diverse party against another, § 1367 would authorize the court to hear, as part of the same case, claims brought by nondiverse parties.  The Supreme Court might have given this reading to § 1367, essentially treating citizenship like the amount-in-controversy requirement at issue in *Allapattah*.  But the Court made it clear that it was *not* overruling *Strawbridge*: a "failure of complete diversity, unlike the failure of some claims to meet the requisite amount in controversy, contaminates every claim in the action." *Id.* at 564. The presence of a nondiverse party, in other words, deprives the district court of jurisdiction over any of the claims; it follows that there is  nothing to which supplemental jurisdiction may attach.  *Id.* at 554.

The third case is *Mollan v. Torrance*, 22 U.S. (9 Wheat.) 537, 539 (1824), which holds that the court's jurisdiction "depends upon the state of things at the time of the action brought . . .."  Plaintiffs argue—or more accurately, assert—that

not until the district court entered its Rule 17 order did the self-funded customers become real and substantial parties for diversity purposes. Therefore, they say, there was diversity jurisdiction at the time they commenced the action. But it was not the district court's ruling that brought the self-funded customers into the case. Plaintiffs did that when they started the lawsuit. The district court's Rule 17 order simply allowed plaintiffs to continue asserting their customers' claims so long as the customers acquiesced. *See Associated Ins. Mgmt. Corp.*, 149 F.3d at 797.

Ordinarily a finding that the district court lacked jurisdiction would lead us to vacate the court's judgment and remand for dismissal. *See, e.g.*, *LoBue v. Christopher*, 82 F.3d 1081, 1082 (D.C. Cir. 1996). But the posture of this case suggests a different disposition. Rule 21 of the Federal Rules of Civil Procedure provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. This Rule allows the district court to dismiss so-called "jurisdictional spoilers"—parties whose presence in the litigation destroys jurisdiction—if those parties are not indispensable and if there would be no prejudice to the parties. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830-32 (1989). The courts of appeals, though not technically governed by Rule 21, may exercise the same power or may remand to the district court for it to make the Rule 21 inquiry in the first instance. *Id.* at 837-38; *Long v. Dist. of Columbia*, 820 F.2d 409, 416-17 (D.C. Cir. 1987).

It might be thought that the ability to dismiss nondiverse parties and retain jurisdiction over the rest of the case is in tension with *Mollan*, as well as *Allapattah*'s holding that the presence of a nondiverse party "contaminates" the entire action, therefore stripping the district court of jurisdiction *in toto*. This tension is resolved through the fiction that Rule 21 relates back

9

to the date of the complaint. *See LeBlanc v. Cleveland*, 248 F.3d 95, 99 (2d Cir. 2001). This way, the court may proceed as if the nondiverse parties were never part of the case. With those parties effectively scrubbed from the complaint, they are not present to contaminate the other claims. The fiction also allows the district court to save its prior rulings, and the jury's findings, which otherwise were entered without jurisdiction. *C.L. Ritter Lumber Co. v. Consol. Coal Co.*, 283 F.3d 226, 229-30 (4th Cir. 2002).

The prudent course here is to remand to the district court to proceed under Rule 21. It is open to the district court to decide that plaintiffs' self-funded customers are not indispensable parties to the case. *See* Fed. R. Civ. P. 19. For the most part, the identity and citizenship of the self-funded customers are not in the record. Evidentiary issues may arise, and the district court may need to determine which, if any, of the self-funded customers may be dismissed in order to restore complete diversity. Since this may also affect damages, the district court may have to conduct a partial retrial on that issue.

We decline to issue any opinion on the merits of defendants' objections to the jury award until such time as jurisdiction is secured.

The case is remanded to the district court for further proceedings consistent with this opinion.

*So ordered.*