NITZA I. QUIÑONES ALEJANDRO, District Judge.
INTRODUCTION
Presently before this Court is a motion to dismiss for lack of subject matter jurisdiction filed by Defendants Foundation Surgery Management, LLC, and Foundation Surgery Affiliates, LLC (collectively, the "Foundation Defendants"). [ECF 208]. The Foundation Defendants seek the dismissal of the action filed by Plaintiff Aetna Life Insurance Company ("Plaintiff" or "Aetna Life") premised on their contention that this Court must consider the non-diverse citizenships of the purported real parties-in-interest which destroy diversity jurisdiction over this matter. Plaintiff has opposed the motion. [ECF 211].[2]
Subsequent to the parties' respective briefing on the Foundation Defendants' motion to dismiss, this Court directed Aetna Life to file a detailed list identifying: (1) the name of all self-insureds on behalf of whom Aetna Life seeks damages in this case and the citizenship of each of these entities for jurisdiction purposes; and (2) the names of the Aetna entities which paid the fully insured claims at issue in this case and the citizenship of these entities for jurisdiction purposes. [ECF 216]. The parties were also directed to address whether any claim belonging to any of the entities identified in Aetna Life's list can and/or should be severed from this matter pursuant to Federal Rule of Civil Procedure ("Rule") 21 in order to preserve diversity jurisdiction. [Id. ]. Both parties complied with said Order.
The issues raised in the Court's Order and the Foundation Defendants' motion to dismiss have been fully briefed and are now ripe for adjudication. Pursuant to Rule 21 and for the reasons set forth, Defendant Huntingdon Valley Surgery Center ("Defendant Huntingdon") is dropped from this matter, as are all claims asserted by Aetna Life on behalf of the self-insureds for whom Aetna Life has not provided citizenship. As a result of this Court's ruling, diversity jurisdiction is maintained, and the Foundation Defendants'
*430 motion to dismiss for lack of subject matter jurisdiction is denied.
BACKGROUND[3]
On June 5, 2013, Aetna Life filed its initial complaint against Defendant Huntingdon Valley Surgery Center ("Defendant Huntingdon"), invoking diversity jurisdiction under 28 U.S.C. § 1322(a), as the basis for federal jurisdiction. Aetna Life is a Connecticut corporation with its principal place of business in Connecticut. Defendant Huntingdon is a Pennsylvania limited partnership with twenty-two limited partners in Pennsylvania and/or New Jersey. Thus, Defendant Huntingdon is deemed a citizen of both Pennsylvania and New Jersey. On December 2, 2013, Aetna Life filed an amended complaint (the operative complaint) which added the Foundation Defendants as parties. The Foundation Defendants are deemed citizens of Oklahoma. All parties agree that on the face of the amended complaint, complete diversity exists with respect to the actual entities named as parties to this litigation. However, as will be discussed below, diversity jurisdiction is destroyed if this Court is required to consider the citizenships of the numerous self-insureds on whose behalf Aetna Life asserts many of its claims since some of these self-insureds are citizens of Pennsylvania and/or New Jersey.
According to the amended complaint, Aetna Life is a managed care company offering insurance and administrative services to employer and pension-sponsored health benefit plans and their members nationwide. It also provides administrative services to health plans that are self-funded by employers or other groups. For its "fully insured" plans, Aetna Life administers health benefit claims and bears the financial risk of paying claims. For its "self-insured" plans, Aetna Life pays claims from the employer's own assets and provides third-party administrative services, such as the processing of claims and the recovery of overpayments. In a fully-insured health plan, premiums are paid to an insurance company, like Aetna Life, in exchange for insurance coverage. In turn, the insurer directly pays covered claims. In a self-funded or self-insured health benefit plan, the organization itself assumes the risk of the cost of health care services for its employees, and typically contracts with an entity, like Aetna Life, to provide administrative services. Aetna Life, serving as a plan administrator, oversees and manages the self-funded plans. As the plan administrator, Aetna Life may advance funds to pay claims, but those funds are reimbursed by the plans.
In the amended complaint, Aetna Life alleges that Defendants violated a Pennsylvania anti-kickback statute, committed insurance fraud, and tortiously interfered with contracts between Aetna Life and Defendant Huntingdon's physician-owners. Aetna Life's accusations stem from Defendants' alleged unlawful and fraudulent business policies and practices contrived and implemented by them to the financial detriment of Aetna Life and to its self-insureds. Briefly, Aetna Life contends that Defendants established an "out-of network" scheme to pay kickbacks to physicians to induce their referral of patients to Defendant Huntington[4] rather than to less *431 costly in-network facilities in the same geographic area. Aetna Life contends that these allegedly fraudulent referrals violate Pennsylvania law and public policy interest in containing healthcare costs; and that Defendants unlawfully inflated healthcare costs payable by Aetna Life and/or its self-insureds when Defendants waived co-payments that Aetna Life's insureds were required to pay for services provided at an out-of-network facility, such as Defendant Huntingdon, without advising Aetna Life of the waiver, while at the same time, billing for the full costs of the provided services.[5]
Notably, over the course of this litigation, Aetna Life has acknowledged that the majority of the damages that it seeks in this litigation were actually incurred by Aetna Life's self-insureds, rather than by Aetna Life. In addition, some of the damages sought were suffered by other Aetna entities, rather than by Aetna Life.
As noted, an appeal was taken on this matter, and a remand was ordered. See supra note 5. Upon remand, the Foundation Defendants filed the underlying motion to dismiss for lack of subject matter jurisdiction. [ECF 208]. Following the parties' briefing on the Foundation Defendants' motion to dismiss, Aetna Life was ordered to identify for diversity jurisdiction purposes: (1) all of the self-insureds on behalf of whom Plaintiff seeks damages in this case and the citizenship of each of these self-insureds; and (2) the Aetna entities which paid fully insured claims at issue in this case, and the citizenship of each such entity. [ECF 216]. The parties were also ordered to address whether any claim belonging to any of the self-insureds and/or Aetna entities identified could and/or should be severed from this matter. [Id. ].
In response to the Order, Aetna Life identified ninety-five (95) entities which held citizenship in either Pennsylvania or New Jersey. None of the entities identified held citizenship in Oklahoma. Aetna Life has admittedly failed to identify the citizenship of ten to fourteen entities. Regardless, in light of Aetna Life's identification of self-insured entities with citizenship in either Pennsylvania or New Jersey, if the citizenship of these Pennsylvania and/or New Jersey self-insured entities is considered for the purpose of jurisdiction, this *432 Court would lack diversity jurisdiction over this matter because of the presence of Defendant Huntingdon, a citizen of both Pennsylvania and New Jersey. As such, this Court must determine whether the citizenship of these self-insureds must be considered for jurisdiction purposes and, if so, whether Rule 21 can and/or should be applied to save this Court's jurisdiction.
STANDARD OF REVIEW
It is well-settled that "federal courts have an ever-present obligation to satisfy themselves of their subject matter jurisdiction and to decide the issue sua sponte ," if necessary. Liberty Mut. Ins. Co. v. Ward Trucking Corp. , 48 F.3d 742, 750 (3d Cir. 1995). If a federal court determines at any stage of a civil action that it lacks subject matter jurisdiction, it generally must dismiss the matter. See Arbaugh v. Y & H Corp. , 546 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) ; In re Caterbone , 640 F.3d 108, 111 (3d Cir. 2011). When challenging a court's subject matter jurisdiction, a party may do so by way of either a facial or a factual attack. See Petruska v. Gannon University , 462 F.3d 294, 302 n.3 (3d Cir. 2006). Here, the Foundation Defendants make a factual attack. The Third Circuit explained a factual attack as follows:
The factual attack, however, differs greatly for here the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction - its very power to hear the case - there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.
Mortensen v. First Fed. Sav. & Loan Ass'n , 549 F.2d 884, 891 (3d Cir. 1977) ; see also Petruska , 462 F.3d at 302 n.3 (quoting Mortensen ). In addition, the plaintiff has "the burden of proof that jurisdiction does in fact exist." Id. at 891 ; see also Lincoln Benefit Life Co. v. AEI Life , 800 F.3d 99, 105 (3d Cir. 2015). Under this standard, a district court has "a free hand in evaluating jurisdictional evidence." Id. at 892.
DISCUSSION
In its motion to dismiss, the Foundation Defendants essentially argue a lack of subject matter jurisdiction because (1) Aetna Life is not the "real party in interest," at least as to some of the claims asserted, and (2) that at least some of the real parties in interest are non-diverse, thereby, destroying diversity jurisdiction.[6] Specifically, as to the self-insured plans (the "self-insureds"), the Foundation Defendants argue that the real party in interest for diversity purposes is the employer or pension that sponsors the plan and actually pays the benefits, not Aetna Life *433 which merely administers the plan. Similarly, the Foundation Defendants argue that for the fully insured plans, Aetna Life is not the real party in interest for diversity purposes with respect to some of the claims asserted because those claims were paid by other Aetna affiliates and not by Aetna Life. In response, Aetna Life argues that it is the real party in interest under Federal Rule of Civil Procedure 17 because some of the claims are, in fact, its own, and because many (though not all) of the other purported real parties in interest have assigned their claims to Aetna Life.
While both parties in this case tangentially mention the "real party in interest" standard of Rule 17(a), it is apparent from the parties' voluminous briefs and relevant caselaw cited that the actual dispute turns on the related question of whether Plaintiff Aetna Life is the "real party to the controversy," rather than the "real party in interest," for purposes of diversity jurisdiction. Rule 17 requires that "[e]very action shall be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). "This means that an 'action must be brought by the person who, according to the governing substantive law, is entitled to enforce the right." Oscar Gruss & Son, Inc. v. Hollander , 337 F.3d 186, 193 (2d Cir. 2003) (quoting 6A Charles Alan Wright, et al., Federal Practice & Procedure § 1543, at 334 (2d ed. 1990) ). The United States Supreme Court has recognized, however, that while "[t]here is a 'rough symmetry' between the 'real party in interest' standard of Rule 17(a) and the rule that diversity jurisdiction depends upon the citizenship of real parties to the controversy[,] ... the two rules serve different purposes and need not produce identical outcomes in all cases." Navarro Sav. Ass'n v. Lee , 446 U.S. 458, 463 n. 9, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980) ; see also Oscar Gruss , 337 F.3d at 194 ; Wilsey v. Eddingfield , 780 F.2d 614, 615 (7th Cir. 1985).
In Navarro , the Supreme Court reaffirmed that "the 'citizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy." Navarro , 446 U.S. at 460, 100 S.Ct. 1779 (citing McNutt v. Bland , 43 U.S. (2 How.) 9, 15, 11 L.Ed. 159 (1844) ); see also Johnson v. SmithKline Beecham Corp. , 724 F.3d 337, 358 (3d Cir. 2013) (citing Navarro ). Therefore, a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy. Id. While a party may be a "real party in interest" and, thus, the action properly may be maintained in its name, that party "must also establish that it is a 'real and substantial party to the controversy' for the purpose of determining diversity jurisdiction." Oscar Gruss , 337 F.3d at 193 (relying on Navarro ); see also Airlines Reporting Corp. v. S and N Travel, Inc. , 58 F.3d 857, 861 n.4 (2d Cir. 1995) (noting that real and substantial parties to the controversy "should not be confused with the 'real party in interest' standard set forth in Fed. R. Civ. P. 17(a)."); Wilsey , 780 F.2d at 615 ("a representative [under Rule 17(a) ] is not necessarily the real party in interest for the purpose of determining diversity jurisdiction.").
Aetna Life argues that it has legal standing to bring the underlying claims on behalf of the other entities without consideration of those other entities' citizenship. That is, Aetna Life asserts that it is the real party in interest for purposes of the present matter because it was actually the payer of benefits with respect to some of its asserted claims in this litigation and, further, has obtained an assignment of rights from many (though not all) of the self-insureds on whose behalf it also asserts claims. In support of its argument, *434 Aetna Life relies on a provision included in its contracts with some of its self-insureds,[7] which provides as follows:
[I]f it is determined that more than the appropriate amount has been paid, Aetna shall undertake good faith efforts to recover the erroneous payment. For the purposes of this provision, 'good faith efforts' means that Aetna will contact the responsible party twice via letter, phone, email, or other means to try to make the recovery. If those efforts are unsuccessful in obtaining recovery, Aetna may use an outside vendor, collection agency or attorney to pursue recovery. Except as stated in this section, Aetna has no other obligations with respect to the recovery of overpayments.
While this contractual provision authorizes Aetna Life to act as an agent for its self-insureds to recover damages on their claims by, in some instances, initiating litigation, these provisions do not constitute assignment of the self-insureds' substantive rights and claims to Aetna Life such that the claims would belong to Aetna Life and not to the self-insureds. This Court finds that this provision does not transfer ownership of any claims otherwise belonging to the self-insureds to Aetna Life. It merely gives Aetna Life the right, but not the obligation, to hire attorneys to pursue overpayments on behalf of the self-insureds. This is very different from an assignment of ownership of the claim itself, more so, as Aetna Life has no right to retain any funds collected in connection with the self-insureds' claims.
Though these purported assignments may provide Aetna Life "real party in interest" status under Rule 17, such status, however, does not equate to the "real party to the controversy" status that is the prerequisite for jurisdiction. See Airlines , 58 F.3d at 862 n.4 (quoting Navarro , 446 U.S. at 462 n.9, 100 S.Ct. 1779 ); see also Wilsey , 780 F.2d at 615. Indeed, the Supreme Court has recognized that the two rules are not the same. Navarro , 446 U.S. at 462 n.9, 100 S.Ct. 1779. Thus, even if Plaintiff Aetna Life is a "real party in interest" under Rule 17(a) and, thus, the action may properly be maintained in its name, Aetna Life must also establish that it is the "real and substantial party to the controversy" with respect to all of the asserted claims for determining diversity jurisdiction. Oscar Gruss , 337 F.3d at 194.[8]
Turning to the question of whether Aetna Life's self-insureds are the "real and substantial parties to the controversy" and, therefore, must be considered as parties for diversity purposes, this Court finds that they are and, therefore, must be considered as parties. In reaching this conclusion, this Court finds persuasive the decision of the United States Court of Appeals for the District of Columbia Circuit in Blue Cross & Blue Shield v. Mylan Laboratories , 631 F.3d 537 (D.C. Cir. 2011).[9] There, *435 the plaintiffs, health insurance companies, sued Mylan Laboratories, Inc., a manufacturer of generic drugs, and two other companies engaged in the business of selling chemicals for pharmaceuticals, for allegedly entering into agreements that allowed Mylan to raise the prices the insurance companies paid for two prescription medications. Id. at 539. Like Aetna Life in the case sub judice , the Blue Cross insurance plaintiffs sued "on behalf of themselves and as claims administrators for their self-funded customers." Id. After a jury returned a verdict in favor of the plaintiffs, the defendants argued for the first time on appeal that the court lacked subject matter jurisdiction because at least one of the plaintiff insurance companies' self-funded customers, on whose behalf the plaintiffs had brought some of the claims, was from the same state as at least one of the named defendants, thereby, destroying diversity jurisdiction. Id. at 539-540. The D.C. Circuit agreed with the defendants, finding that the self-insureds were the "real and substantial" parties with respect to those claims asserted by the plaintiff insurance companies for which the self-insureds had suffered the injury. Id. at 540. As such, the D.C. Circuit concluded that the self-insureds "must be treated as parties for diversity purposes." Id. (citing Navarro , 446 U.S. at460-61, 100 S.Ct. 1779 ).
The instant case is nearly identical to Blue Cross. As in Blue Cross , Aetna Life asserts claims on its own behalf and on behalf of many of its self-insureds. Those self-insureds, not Aetna Life as the plan administrator, were the ones who felt the effect of Defendants' alleged violations with respect to the claims Aetna Life asserts on the self-insureds' behalves. Indeed, according to Aetna Life's own expert, over sixty percent of the damages allegedly suffered and sought in this litigation were suffered by the self-insureds, not Aetna Life. As in Blue Cross , under these circumstances, Aetna Life's self-insureds are the "real and substantial" parties with respect to the claims asserted on their behalves and must be treated as parties for diversity consideration. Navarro , 446 U.S. at 460-61, 100 S.Ct. 1779.
Having reached the foregoing conclusion, the Court must now determine whether federal subject matter jurisdiction exists. As noted above, this litigation is based entirely on diversity jurisdiction since there is no federal question involved. For a case to fall within the diversity statute, 28 U.S.C. § 1332, there must be complete diversity among the parties, in that no plaintiff and no defendant may be citizens of the same state. Carden v. Arkoma Assoc. , 494 U.S. 185, 187, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990). Generally, there is a presumption against the existence of federal jurisdiction. 13A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Fed. Prac. & Proc. § 3522 (3d ed.). "A party who invokes the jurisdiction of the federal courts has the burden of demonstrating the court's jurisdiction." Columbia Gas Transmission Corp. v. Tarbuck , 62 F.3d 538, 541 (3d Cir. 1995) ; Correctional Med. Care, Inc. v. Gray , 2008 WL 248977, at *3 (E.D. Pa. Jan. 30, 2008).
*436 Although the Defendants named in this civil action are citizens of Pennsylvania, New Jersey, and Oklahoma, and Aetna Life is incorporated in Connecticut, the crucial citizenship for consideration is that of all of the "real and substantial parties to the controversy." Navarro , 446 U.S. at 460-61, 100 S.Ct. 1779. Having determined that the relevant citizenships for diversity purposes here include those of the self-insureds allegedly owed money by Defendants, this Court must look to the state of incorporation and principal place of business for each of these self-insureds to determine if the requirements of the diversity statute have been met. See 28 U.S.C. § 1332(c) (noting that a corporation shall be deemed to be a citizen of both its state of incorporation and state where it has its principal place of business). Aetna Life has identified the citizenship of 193 of its self-insureds. Though none of those identified are citizens of Oklahoma (like the Foundation Defendants), 95 are citizens of either Pennsylvania and/or New Jersey (like Defendant Huntingdon). As such, complete diversity does not exist.
However, our analysis does not stop here since it does not necessarily follow that this entire action must be dismissed at this advanced stage for lack of diversity. When the parties to an action are not completely diverse, "[t]he authority of a district court to drop nondiverse parties whose presence is not essential to the suit in order to preserve and perfect its diversity jurisdiction is well-established." Field v. Volkswagenwerk AG , 626 F.2d 293, 296 (3d Cir. 1980), modified on other grounds, Newman-Green, Inc. v. Alfonzo-Larrain , 490 U.S. 826, 833-34, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989). Such authority "derives from [Federal Rule of Civil Procedure] 21," id. at 297, which provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. This Rule allows a district court to dismiss so-called "jurisdictional spoilers" - parties whose presence in the litigation destroys jurisdiction - if those parties are not indispensable and if there would be no prejudice to the parties. Newman-Green , 490 U.S. at 830-32, 109 S.Ct. 2218. "[I]t is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered." Newman-Green , 490 U.S. at 832, 109 S.Ct. 2218 ; CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc. , 357 F.3d 375, 382 n.6 (3d Cir. 2004) ("[I]t is well established that courts, both district and circuit alike, have the power under Fed. R. Civ. P. 21 to dismiss dispensable parties to the suit in order to preserve diversity."); Enza v. We The People, Inc. , 838 F.Supp. 975, 977 (E.D. Pa. 1993) (citing Newman-Green ). Dropping nondiverse parties restores complete diversity and, thus, "cures" the "jurisdictional defect." Caterpillar Inc. v. Lewis , 519 U.S. 61, 73, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996). When a nondiverse party is dropped pursuant to Rule 21, the dropping of the nondiverse party relates back to the original filing. Field , 626 F.2d at 297 ; Grupo Dataflux v. Atlas Global Group, L.P. , 541 U.S. 567, 572, 124 S.Ct. 1920, 158 L.Ed.2d 866 (2004). "A district court has broad discretion in deciding whether to sever a party pursuant to Federal Rule of Civil Procedure 21." Slater v. Hoffman-La Roche Inc. , 771 F.Supp.2d 524, 529 (E.D. Pa. 2011).
"Whether a party may be dropped depends on whether the party is 'indispensable' to a just and meaningful litigation of the claims remaining in the suit." Field , 626 F.2d at 297. This determination is made consistent with the requirements of Rule 19.
*437 Zambelli Fireworks Mfg. Co., Inc. v. Wood, 592 F.3d 412, 421 (3d Cir. 2010). Under Rule 21, "[m]isjoinder of parties is not a ground for dismissing an action," Fed. R. Civ. P. 21, and "[c]onsiderations of efficiency, fairness, and judicial economy weigh against a wholesale dismissal of [an] action" once litigation is well underway. Zambelli , 592 F.3d at 420-21. "[R]equiring dismissal after years of litigation would impose unnecessary and wasteful burdens on the parties, judges, and other litigants waiting for judicial attention." Id. at 421 (quoting Newman-Green , 490 U.S. at 836, 109 S.Ct. 2218 ). Accordingly, "if [the nondiverse party's] interests are severable and a decree without prejudice to their rights can be made, the jurisdiction of the court should be retained and the suit dismissed as to [the nondiverse party]." Field , 626 F.2d at 297 (citations omitted).
Dismissing nondiverse parties pursuant to Rule 21 and proceeding as if they were never a part of the case in order to retain diversity jurisdiction finds support in Supreme Court precedent. In Grupo Dataflux v. Atlas Global Group, L.F. , 541 U.S. 567, 572, 124 S.Ct. 1920, 158 L.Ed.2d 866 (2004), the Supreme Court noted that, while diversity jurisdiction is generally determined as of the time the complaint is filed, dismissing a party who destroys diversity has "long been an exception to the time-of-filing rule." The Court wrote:
"[T]he question always is, or should be, when objection is taken to the jurisdiction of the court by reason of the citizenship of some of the parties, whether ... they are indispensable parties, for if their interests are severable and a decree without prejudice to their rights may be made, the jurisdiction of the court should be retained and the suit dismissed as to them." Horn v. Lockhart , 84 U.S. (17 Wall.) 570, 579, 21 L.Ed. 657 (1873). Federal Rule of Civil Procedure 21 provides that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." By now, "it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered." Newman-Green, Inc. v. Alfonzo-Larrain , 490 U.S. 826, 832, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989).
Id. at 572-73 ; see also Zambelli , 592 F.3d at 422 (dismissing non-diverse party on appeal, thereby allowing the court to consider merits of the appeal); Doe v. Exxon Mobil Corp. , 654 F.3d 11, 71 (D.C. Cir. 2011) (holding that Rule 21"permits dismissal of 'jurisdictional spoilers' and creates a 'fiction that [the dismissal] relates back to the date of the complaint.' ").
To invoke Rule 21, however, the party or parties to be dismissed must not be indispensable under Rule 19 and there must be no prejudice to the party or parties arising from the dismissal. Zambelli , 592 F.3d at 421 ; Blue Cross , 631 F.3d at 542 ; CP Solutions PTE, Ltd. v. GE , 553 F.3d 156, 159 (2d Cir. 2009) (" Federal Rule of Civil Procedure 21 allows a court to drop a nondiverse party at any time to preserve diversity jurisdiction, provided the nondiverse party is not 'indispensable' under Rule 19(b)."). Before the court determines whether a party is "indispensable" under Rule 19(b), it must first determine under Rule 19(a) whether the party is "necessary"[10] to the action. See *438 Gen. Refractories Co. v. First State Ins. Co. , 500 F.3d 306, 312 (3d Cir. 2007). If the party is "necessary," but its joinder to the action is not feasible because it would defeat diversity jurisdiction, a court must then determine whether the absent parties are "indispensable" under Rule 19(b). Id. If the non-diverse party is dispensable under Rule 19, the party can be dropped by way of Rule 21. See Zambelli , 592 F.3d at 421.
Under Rule 19(a), a party is a necessary or required party if "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). A party is also deemed necessary if the party has an interest in the action such that disposing of the interest in the party's absence might (1) "impair or impede the person's ability to protect the interest" or (2) "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Id. at 19(a)(1)(B)(i)-(ii). If joinder of a "necessary" party is infeasible because joinder would destroy the court's diversity jurisdiction, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b) ; see also Gen. Refractories , 500 F.3d at 319. Factors to consider include: (1) "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;" (2) "the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping relief, or other measures;" (3) "whether a judgment rendered in the person's absence would be adequate; and" (4) "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P. 19(b). With these principles in mind, the Court turns to the parties' arguments.
In its response to the issue of severance, Aetna Life argues that this Court should drop Defendant Huntingdon (who has already been dismissed pursuant to Rule 41) from this matter, thereby preserving this Court's diversity jurisdiction over the bulk of its asserted claims.[11] Doing so, Aetna Life correctly points out, will cure the lack of complete diversity with respect to all but those claims asserted by Aetna Life on behalf of entities whose citizenship remains unknown. The Foundation Defendants, on the other hand, argue that this Court should not drop or sever any parties or claims but should rather dismiss the action in its entirety because of the lack of complete diversity between the originally named parties, once the citizenships of the other real parties in interest are considered.
This Court finds that Defendant Huntingdon, who has already been dismissed pursuant to Rule 41, [see ECF 161], is not a necessary or an indispensable party under the standards outlined above and, therefore, it can be dropped from this action in order to preserve this Court's jurisdiction. First, Defendant Huntingdon is not a necessary party to this litigation under Rule 19(a) because complete relief can be accorded to the remaining parties in Huntingdon's absence. See Fed. R. Civ. P. 19(a)(1)(A). Further, assuming arguendo that Defendant Huntingdon claims an interest relating to the subject of this action now that it has settled *439 with Aetna Life and been dismissed from this action, disposition of the case in Defendant Huntingdon's absence neither impedes its ability to protect that interest nor "leave[s] an existing party subject to substantial risk of incurring double, multiple or otherwise inconsistent obligations because of the interest." See Fed. R. Civ. P. 19(a)(1)(B). Further, Defendant Huntingdon is not a necessary or indispensable party to this litigation because it is "no more than an alleged joint tortfeasor" accused of participating with the Foundation Defendants in the same fraudulent scheme. In re Howmedica Osteonics Corp. , 867 F.3d 390, 408 (3d Cir. 2017). It is "well-established that [ Rule] 19 does not require the joinder of joint tortfeasors." Lomando v. United States , 667 F.3d 363, 384 (3d Cir. 2011) (citation omitted); see also Temple v. Synthes Corp., Ltd. , 498 U.S. 5, 7, 111 S.Ct. 315, 112 L.Ed.2d 263 (1990) ("It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit."). No compelling argument has been presented to show that either Defendant Huntingdon or the Foundation Defendants would suffer meaningful prejudice were this action to proceed in the absence of Defendant Huntingdon. Therefore, Defendant Huntingdon is not indispensable and can be dropped pursuant to Rules 19 and 21 in order to preserve this Court's diversity jurisdiction over this matter.[12]
Aetna Life also argues that this Court should sever any claims brought by Aetna Life on behalf of those self-insureds whose citizenship remains unknown. Applying the same principles outlined above and the persuasive analysis in Blue Cross v. Mylan Labs., Inc. , 900 F.Supp.2d 8, 13-15 (D.D.C. 2012), wherein the court found similar self-insureds not to be indispensable parties, this Court finds that the self-insureds for whom Aetna Life has not provided citizenship information are neither necessary nor indispensable to this litigation. Clearly, complete relief can be accorded to the remaining parties in the absence of these self-insureds. Fed. R. Civ. P. 19(a)(1)(A). Further, the disposition of the case in these self-insureds' absence neither impedes their ability to protect their interest nor "leave[s] an existing party subject to substantial risk of incurring double, multiple or otherwise inconsistent obligations because of the interest."See Fed. R. Civ. P. 19(a)(1)(B). Accordingly, these self-insureds are not indispensable and can be dropped pursuant to Rules 19 and 21 in order to preserve this Court's diversity jurisdiction over this matter.
CONCLUSION
For the reasons stated, the self-insureds on whose behalf Plaintiff Aetna Life asserts claims are "real and substantial" parties to this action and, thus, the citizenships of these self-insureds must be considered for diversity jurisdiction purposes. Because some of these self-insureds are citizens of Pennsylvania and/or New Jersey, complete diversity does not exist while Defendant Huntingdon remains in this action. Notwithstanding, this Court exercises its discretion to drop Defendant Huntingdon, as well as those self-insureds *440 for whom Aetna Life has not provided citizenship information, from this action pursuant to Federal Rules of Civil Procedure 19 and 21, in order to retain jurisdiction over this matter. Accordingly, the Foundation Defendants' motion to dismiss for lack of subject matter jurisdiction is denied.

In adjudicating the underlying motion, this Court has also considered the parties' respective supporting briefs and exhibits. [ECF 213, 214, 215, 219, 221, 222, 223, 224, and 225].

The factual and procedural background underlying the parties' complex dispute is well-known to the litigants and is set forth in great detail in both Judge Yohn's September 15, 2015 Memorandum Opinion and in the undersigned's January 28, 2016 Memorandum Opinion. Therefore, it need not be repeated in detail except, where necessary, to provide context to the analysis provided.

Defendant Huntingdon is an ambulatory surgery center primarily owned by 22 physicians and is an out-of-network provider. The physician-owners of Defendant Huntingdon, however, each have a separate provider agreement with Aetna Life which governs the relationship with Aetna Life. The Foundation Defendants manage Defendant Huntingdon's day-to-day operations.

On June 19, 2015, Defendant Huntingdon and the Foundation Defendants each moved for summary judgment on Aetna Life's remaining claims. Aetna Life cross-moved on its insurance fraud claim (Count III) and moved for summary judgment on Defendant Huntingdon's counterclaims. Defendant Huntingdon subsequently settled with Aetna Life and is, therefore, no longer a party in this action. By Memorandum Opinion and Order dated September 15, 2015, Judge Yohn granted summary judgment to the Foundation Defendants on Counts: I (violation of Pennsylvania anti-kickback statute); III (insurance fraud); IV (aiding and abetting insurance fraud); VIII (equitable relief); and IX (equitable accounting) of Aetna Life's amended complaint. Only Count II (civil conspiracy) and Count V (tortious interference with contract) of the amended complaint survived for trial. On September 22, 2015, this matter was reassigned to the undersigned as a result of Judge Yohn's retirement. [ECF 186].
On September 29, 2015, Aetna Life filed a motion for reconsideration or, in the alternative, for certification for interlocutory appeal which the Foundation Defendants opposed. [ECF 188, 189]. By Memorandum Opinion and Order dated January 28, 2016, this Court denied Aetna Life's motion for reconsideration and certified the matter for interlocutory appeal. [ECF 197, 198]. On July 19, 2017, the United States Court of Appeals for the Third Circuit ("Third Circuit") reversed, in part, and revived the insurance fraud claims.

Federal courts are courts of limited jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am. , 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Under federal law, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between - (1) citizens of different States ...." 28 U.S.C. § 1332(a)(1). Section 1332(a)(1)"requires complete diversity between the parties - that is, jurisdiction is lacking if any plaintiff and any defendant are citizens of the same state." Mennen Co. v. Atl. Mut. Ins. Co. , 147 F.3d 287, 290 (3d Cir. 1998) (citing Strawbridge v. Curtiss , 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806) ). Here, the amount in controversy requirement is uncontested; the issue is whether there is complete diversity of citizenship, if the Court is required to consider the citizenships of each of the purported real parties in interest.

Notably, Aetna Life contends that it has received such "assignments" from only some of its self-insureds.

Notably, most of the cases on which Aetna Life relies are wholly inapposite. These cases concern evaluation of the real party in interest under Rule 17. But courts implementing Navarro's directive to ensure that "a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy," 446 U.S. at 461, 100 S.Ct. 1779 (citations omitted), have made clear that the standards for determining a "real party in interest" under Rule 17 and for ascertaining whether diversity jurisdiction exists under § 1332 are not identical. See e.g. , Airlines , 58 F.3d at 861 n.4 ; Wilsey , 780 F.2d at 615 ; Oscar Gruss , 337 F.3d at 194.

Though the precise question before this Court has not been directly addressed by the Third Circuit, several other circuits and district courts have concluded that when a corporation sues as a representative of a real party in interest and not merely to assert its own rights, diversity jurisdiction must be based on the citizenship of the real parties in interest, not solely on the citizenship of the representative corporation. See Associated Ins. Mgmt. Corp. v. Arkansas Gen. Agency, Inc. , 149 F.3d 794, 797-98 (8th Cir. 1998) ; Airlines , 58 F.3d at 862 ; Nat'l Ass'n of Realtors v. Nat'l Real Estate Ass'n , 894 F.2d 937, 940 (7th Cir. 1990) ; Aetna Cas. & Sur. Co. v. Iso-Tex, Inc. , 75 F.3d 216, 218 n.2 (5th Cir. 1996) ; E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co. , 160 F.3d 925, 931 (2d Cir. 1998) (quoting Northern Trust Co. v. Bunge Corp. , 899 F.2d 591, 594 (7th Cir. 1990) ); Zee Med. Distrib. Ass'n., Inc., v. Zee Med., Inc. , 23 F.Supp.2d 1151, 1156 (N.D. Cal. 1998).

Although Rule 19 speaks of "required" parties due to 1966 amendments, courts still refer to the joinder of "necessary" parties, referencing pre-amendment terminology and case law that has carried over to the current rule. See, e.g. , Disabled in Action of Pa. v. Se. Pa. Transp. Auth. , 635 F.3d 87, 97 (3d Cir. 2011) ; Gen. Refractories Co. v. First State Ins. Co. , 500 F.3d 306, 312 (3d Cir. 2007).

As discussed below, Aetna Life also proposes severance of any claims asserted on behalf of self-insureds for whom Aetna Life is unable to provide the requisite citizenship information for diversity jurisdiction purposes.

In addition, courts have also related back a Rule 41 dismissal of a party to the operative complaint to allow the perfection of diversity. FC Online Marketing, Inc. v. Tara Costa , 2014 WL 12576798, at *2 (M.D. Fl. Nov. 4, 2014) (allowing parties to dismiss a non-diverse party pursuant to Rule 41 to cure lack of diversity jurisdiction); Byrd v. Howse Implement Co., Inc. , 227 F.R.D. 692, 694-95 (M.D. Ala. May 4, 2005) ; Wire v. Hussman , 2004 WL 723845, at *4 (N.D. Ill. Mar. 31, 2004) ; see also In re Lipitor Antitrust Litig. , 722 F. App'x 132, 135-36 (3d Cir. 2018) (finding diversity jurisdiction proper after plaintiffs voluntarily dismissed non-diverse defendants prior to final judgment).